IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    )
    )
    v.    )    Criminal No. 19-219
    )
MUSTAFA MOUSAB ALOWEMER    )

### REPLY TO GOVERNMENT RESPONSE WITH RESPECT TO SENTENCING ENHANCEMENT

NOW COMES Mr. Mustafa Mousab Alowemer, through his counsel, Assistant Federal Defenders Andrew Lipson and Sam Saylor, respectfully filing this Reply to the Government's Response to Mr. Alowemer's Objections to the Presentence Report and Position with Respect to Sentencing Factors. In support thereof, counsel states:

1.    In his position with respect to sentencing factors, Mr. Alowemer objected to application of the terrorism enhancement under U.S.S.G. § 3A1.4. ECF No. 127. Specifically, he argued that the government has failed to carry its burden that he specifically intended that his material support offense (1) "influence or affect the conduct of government by intimidation or coercion," or (2) "retaliate against government conduct." *See* 18 U.S.C. § 2332b(g)(5). Specifically, the government cannot establish what government and what government conduct against which Mustafa's actions were calculated to influence or retaliate. Rather, Mr. Alowemer targeted the Legacy International

Worship Center – whose members he described as "polytheist Christians" – for religious reasons. Mustafa's focus on religiosity arises repeatedly in his discussions with the undercover agents.

2.      In its Response, the government argues that Mr. Alowemer's mere violation of 18 U.S.C. § 2339B(a)(1) is sufficient to satisfy its burden that he *specifically intended* to influence or affect *specific* government conduct or to retaliate against *specific* government conduct. "Many courts . . . interpret 'calculated' as nearly synonymous with intentional." *United States v. Siddiqui*, 699 F.3d 690 (2nd Cir. 2012). "Calculation is concerned with the object that the actor seeks to achieve through planning or contrivance." *United States v. Awan*, 607 F.3d 306, 317 (2d Cir. 2010). But here, the government cannot establish the "object" that Mustafa supposedly sought to achieve.

3.      Effectively, the government argues that Mustafa's professed support for ISIS and the planned attack on the Legacy Worship International Center – conduct for which he has already pled guilty – is itself evidence he sought to influence or affect government conduct of the United States. Govt. Resp. at 16. On the contrary, more is required: "[I]t is not enough that such support will generally "lead to" more acts of terrorism. That reasoning does not distinguish between conduct that satisfies the material support statute and the specific intent required to establish calculated retaliation for purposes of the terrorism enhancement." *Alhaggagi*, 978 F.3d at 704.

4.      Rather, in cases where the terrorism enhancement has been applied, the defendants expressed repeated, clear intent that their offense be directly linked to influencing or retaliating against particular actions of a particular governmental entity. *See e.g.*, *United States v. Mandhai*, 375 F.3d 1243, 1247 (11th Cir. 2004) (upholding application of terrorism enhancement where defendant admitted he was planning to blow up electrical sites and then demand United States release of Muslim prisoners); *United States v. Wright*, 747 F.3d 399, 410 (6th Cir. 2014) (attempting to bomb a bridge to advocate for changes in government policy); *United States v. Dye*, 538 F. App'x 654, 655 (6th Cir. 2013) (applying enhancement where defendant intended to retaliate against court for charges pending against him when he firebombed the chambers of a judge presiding over those cases).

5.      By contrast, here, there is no such direct link. Rather, because no clear link between action and objective exists, the government is constrained to offer varying explanations of which government Mr. Alowemer was purportedly targeting and speculate as to the governmental conduct he purportedly sought to influence or retaliate against.[1] The application of the enhancement requires more than mere suppositions about what government and government action Mr. Alowemer might have calculated his offense to affect.

---

[1] Defense counsel expects the government's witness at sentencing, Dr. Colin Clarke, will testify to geo-political events throughout the 2010s in an effort to make such attenuated connections.

6.     Overall, as detailed in defendants sentencing memo, at the time of his conversations with undercover agents, Mr. Alowemer was a frustrated young man with severe PTSD from an adolescence spent in a war zone. This PTSD was retriggered from content he consumed and news he received on his phone about the conflict in Syria. Particularly, news regarding the death of friends and loved ones in Syria left him with a deep sense of hopelessness and survivor's guilt. Def Sentencing Memo Doc. 136 at 27-28. This guilt made him feel powerless and despondent, and he was desperate to do *something* in response to the news that was reaching him through social media. He wanted to stop feeling helpless and take action. And while he expressed repeated frustration about what was happening in Syria, and what he perceived to be happening to Muslims in the world, there is no evidence – beyond these amorphous frustrations – that Mustafa's actions in this case were "calculated, *i.e.*, planned – for whatever reason or motive – to achieve the stated object." *Awan*, 607 F.3d at 317. In the recorded conversations with the undercover agents there is no consistent, stated objective.

7.     In its second flawed argument, the government cites to *United States v. Allen*, 364 F. Supp. 3d 1234, 1246 (D. Kan. 2019) and *United States v. Stein*, 985 F.3d 1254 (10th Cir. 2021), for the proposition that inspiring like-minded individuals to engage in "similar" violent conduct is a "factor" is assessing whether § 3A1.4 applies. Govt. Response at 16. In that case, the

4

defendants planned to detonate multiple explosives *during* prayer time at apartment buildings where a number of Muslims lived. The defendants also planned to target landlords who rented to Muslims and local government officials that he and his conspirators blamed for bringing Muslims to the area. Significantly – and far different than any evidence in this case – the defendants planned to contemporaneously release a manifesto addressed "to the U.S. govt and the American people" to change its border policy and stop allowing Muslims – who he characterized as cockroaches – into the country. *Id.* at 1239-40. "Allen intended for the conspiracy to influence or retaliate against the government, and he made that purpose abundantly clear to Stein and Wright." *Id.* at 1249.

8.    The Tenth Circuit agreed there was "ample evidence" that the offenses were calculated to influence government immigration conduct because the manifesto was *addressed to* the U.S. government and emphasized "it must be understood by all what our government is up to . . ." and contained "multiple references to the immigration policy of the Obama administration as motivating factor for the attack." *Stein,* 985 F.3d at 1267.

9.    In *Allen* and *Stein* the planned attack had both a clear government objective that the defendants wanted to influence and they had arranged to claim credit. The manifesto was written "to ensure the purpose of the attack was clear" and the attacks and the manifesto were to "force people to 'wake up' and take a stand against the tyranny of the government." *Allen,* 364

F. Supp. 3d at 1246-47. By contrast, there is no apparent link between a government conduct "object" and the Legacy International Worship Center plot that Mr. Alowemer planned with the undercover agents. No specific government conduct is targeted. And while there is discussion early on about claiming an attack on behalf of ISIS, during the fourth meeting with the agents Mustafa determined that the goal is to only destroy the church, elected to only use one explosive device instead of two, and decided that announcing the plot was done by ISIS was not necessary, instead proposing to "stay quiet."[2] All of these decisions directly conflict with the government's assertion that Mr. Alowemer wanted to inspire "ISIS adherents" with his actions.

10.     The government's third swing includes citing a single line in hundreds of pages of chat as evidence that Mr. Alowemer wanted to attack the Legacy International Worship Center in retaliation for events in Nigeria. Govt. Resp. at 15. A reproduction of the full exchange shows the context in which Mr. Alowemer speaks about the Legacy International Worship Center.

---

[2] GOVT_19219_00538.

| MA: | *And the – uh, this house is still for the ones who go to church because they are Nigerians. [UI]* |
| UCE: | *Yeah. So,* why the Nigerians? All of them are polytheists. |
| MA: | They are all polytheists. *We, we, take revenge for our brothers in Nigeria.* |
| UCE: | There is an Islamic State or there was an Islamic State in Nigeria. |
| MA: | Of course there is [UI] |
| UCE: | Boko Haram? |
| MA: | *Boko Haram. It doesn't – it did not pledge fealty brother.* |
| UCE: | Of course it did. |
| MA: | *Not always.* |
| UCE: | OK. |
| MA: | *I am not sure about this. And uh, I will Inshallah – they all uh. They all were pious. But thank God [UI] Abu Walid Al Filastini is the leader of ISIS and God willing he will start doing things to the French* |

11.     Mr. Alowemer reasoning for why the Legacy International Worship Center is selected is in direct response to the UCE questioning him. His *first response* is that "they are all polytheists." Only after stammering, does he secondarily present the "revenge of the brothers in Nigeria" rationale. But only a few lines later Mr. Alowemer admits he isn't sure about the situation in Nigeria. And after this exchange Boko Haram, ISIS in Nigeria, fighting in Nigeria is *never brought up again* in conversation between Mr. Alowemer and the undercover agents. This conversation forms the entire basis for the government's assertion that he "calculated" his attack to affect or retaliate against the Nigerian government.

12.     In numerous cases involving the application of the terrorism enhancement, the attack is on a government building or structure and the link between the attack and government is clear. *See, e.g., United States v. Stafford,* 782 F.3d 786, 792 (6th Cir. 2015) ("targeting government infrastructure is "at

least some evidence of intent to affect government conduct."). But it remains unclear how an attack on an American Christian church could reasonably be "calculated" to affect or retaliate against conduct of the government of Nigeria. This is particularly so with Mr. Alowemer choosing a time where he at least believed there would be nobody in the building (the middle of the night) [3] and later suggesting they "stay quiet" about the attack. This stray comment – where he also admits not being sure of the political situation and ISIS's involvement in Nigeria – is not enough for the government to meet its burden for this drastic enhancement. [4]

13.     Finally, the government's clipped refrain that Mr. Alowemer's "personal motive" is "irrelevant" is not helpful to this Court in determining the application of the enhancement. The Court in *Awan* distinguished between personal motive and calculated effect, using the example of a political assassin motivated by greed may nonetheless be guilty of the enhancement because the political assassination would influence government conduct. *Awan*, 607 F.3d at

---

[3] GOVT_19219_000481.

[4] In its concluding paragraph, the government contends that Mr. Alowemer's actions warrant the application of the terrorism enhancement because he sought to influence or retaliate against conduct of the Syrian government. Syria has been designated by the United States Department of State to be a State Sponsor of Terrorism. *See* State Sponsors of Terrorism, Bureau of Counterterrorism, U.S. Department of State, *available at* https://www.state.gov/state-sponsors-of-terrorism/. Defense counsel has been unable to locate a case in which the terrorism enhancement was applied where the government in question has received such a designation.

318. While the defense agrees that private motivations are not the crucial inquiry, there must remain some link between what Mr. Alowemer understood about the world, his plans to attack the Legacy Worship International Center, and his calculated objective in that attack.

14.    Mr. Alowemer's statements, when read in the context in which they were made, along with other comments he made throughout the investigation, show that his focus, understanding of the world, and animus was driven by religious doctrine, not by a desire to affect or respond to government conduct. The Legacy International Worship Center is not a government entity, it is a private religious entity. The targets discussed prior to the Legacy Worship Center were also religious entities.[5] *See* Def. Sent. Memo at 41.  And perhaps most significantly – his selection of a church is consistent with comments he posted on Facebook *before the FBI ever directly contacted Mustafa* demonstrating religious animus towards people of other faiths.

15.    The most succinct explanation of the government's interest in investigating Mr. Alowemer is set forth in FBI Special Agent Nicholas Edquist's affidavit in support of the Facebook search warrant, dated April 3, 2019.[6] The government's investigation into Mr. Alowemer originated after learning of

---

[5] GOVT_19219_000641.

[6] Agent Edquist's affidavit is listed as "Document 5" in the government's production, with a Bates range of GOVT_19219_000030 to GOVT_19219_000052.

certain online activity from July 2017 to October 2018, with a focus on his Facebook activity from April to May 2018. In early 2018, the FBI was investigating a Facebook user who posted ISIS propaganda on multiple accounts. Mr. Alowemer befriended at least one of those accounts, and made a total of 14 public comments on 6 separate posts made by that user on her various Facebook accounts. Of particular relevance to the application of the terrorism enhancement in this case are his posts on April 15, 2018. According to Agent Edquist's affidavit, the Facebook user under investigation posted a link to a video with the following description translated by an FBI linguist: "Sufis in Nigeria are climbing a lamp post to be blessed from. The face of their deceased Sheikh Ibrahim Inyass is allegedly seen coming out from the light." Mr. Alowemer's comment on the post and the subsequent responses, as translated by the FBI linguist, demonstrated anger at the Nigerians based on their religious views and behaviors:

- Mustafa: "God curse them. Fucking stupid people what the fuck they think."

- FB User: "watch your language Brother please."

- Mustafa: "I am sorry brother but I didn't control myself when I see those people really doing that.

- Mustafa: "I am sorry."

- FB User: "It's ok no problem, they are pathetic to say the least."

10

- FB User: "They are worse than the people who where [sic] gathering around the virgin mary statue cuz they claimed it was crying."

- Mustafa: "that's right."

- Mustafa: "May God reward you brother."

16.    Mustafa's comments on this post stand in stark contrast to all public statements he made on Facebook, before and after. Other Facebook comments by Mustafa referenced in Agent Edquist's affidavit all show short unemotional responses such as "in God's will," and "God is great. Praise to you, O God. For you to be satisfy [sic]. O God give victory to the Islamic State militants." Effectively, the one instance where Mustafa makes a public comment taking any substantive or emotional position on a pro-ISIS post is when the religious behavior of Nigerians is the subject of the post.

17.    That animus toward Nigerian religiosity was expressed throughout the government's investigation – both before and after FBI agents made direct contact with Mustafa. Mustafa's consistent expression of religious animus toward Nigerians for well over a year is the most clear indication of his purpose in targeting the Legacy International Worship Center.

18.    For the reasons articulated above and in Defendant's Position and Objections (Doc. 127), it is respectfully requested that this Court deny the application of the enhancement under Section 3A1.4.

Respectfully submitted,


***s/ Andrew Lipson***
Andrew Lipson
Assistant Federal Public Defender
1001 Liberty Avenue
1500 Liberty Center
Pittsburgh, PA 15222
Main: 412-644-6565
Fax: 412-644-4594


***s/ Sam Saylor***
Sam Saylor
Assistant Federal Public Defender
1001 Liberty Avenue
1500 Liberty Center
Pittsburgh, PA  15222
Main: 412-644-6565
Fax: 412-644-4594