**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **Cr. Nos. 19-219** |
| | ) | |
| MUSTAFA MOUSAB ALOWEMER | ) | |

**<u>TENTATIVE FINDINGS AND RULINGS</u>**

The Probation Office has conducted a presentence investigation and submitted a

presentence report.  ECF No. 124.  Both parties have been given the opportunity to file

objections and position papers as required by Local Criminal Rule 32.C.4.  The Defendant,

Mustafa Mousab Alowemer, has filed objections and indicates his intention to seek a

departure or in the alternative a variance.  ECF No. 127.  The government has filed a

Response to the objections.  ECF No. 132.  The Probation Office has submitted an addendum

to the presentence report pursuant to Local Criminal Rule 32.C.6, addressing the objections.

ECF No. 133.  Accordingly, pursuant to Local Criminal Rule 32.C.7, the Court hereby

notifies the parties of the following tentative findings and rulings concerning disputed facts or

factors.

**I.     Factual Objections to Offense Conduct**

Mr. Alowemer objects to the factual descriptions contained in paragraphs 22, 23, and

24, arguing that the factual recitation of the events contained within said paragraphs does not

accurately reflect the evidence.  ECF No. 127, at 1-3.

**A.     Paragraph 22**

Paragraph 22 states:

On June 2, 2019, Alowemer and the UCE [FBI Undercover Employee] met for
a third time in the Pittsburgh area for nearly 3 hours.  Alowemer identified

what he described as a "Nigerian" church as his target for conducting a violent attack.  Alowemer expressed his hope that destroying the Church with explosives would inspire other ISIS "brothers" in the United States to rise up and take similar actions.  Alowemer claimed to want to target Nigerian [polytheist] Christians based upon his support for ISIS and their presence in Nigeria.

PSR, ¶ 22.  The government avers that the content of paragraph 22 is an accurate summary of

paragraph 27 of the Affidavit filed in support of the Criminal Complaint filed on June 18,

2019.  ECF No. 132, at 5-6 (Affidavit filed at ECF No. 3-1).  Paragraph 27 of said Affidavit

states:

> 27.  On or about June 2, 2019, ALOWEMER and the UCE met for a third time in the Pittsburgh area for approximately three hours. Near the start of the meeting, ALOWEMER provided the UCE with two rings bearing the ISIS insignia, intended for the UCE and the CHS to keep as gifts from ALOWEMER. In the course of the meeting, ALOWEMER communicated what he described as a "mushrikeen"[12] and '"Nigerian" church as his new target for conducting a violent attack. In articulating his idea, ALOWEMER expressed the hope that destroying the Church with explosives in the name of ISIS would inspire other ISIS "brothers" in the United States to join together and take similar actions. Furthermore, in the following exchange with the UCE, ALOWEMER explicitly tied his support for ISIS to his rationale for wanting to target Nigerians in particular:
>
>> **ALOWEMER: All of them are Mushrikeen [Polytheist Christians].**
>> UCE: Oh yeah! Polytheist and infidels.
>> **ALOWEMER: And the – uh, this house is still for the ones who go to church because they are Nigerians . . .**
>> UCE: Yeah. So why the Nigerians? All of them are polytheists.
>> **ALOWEMER: They are all polytheists. We, we, take revenge for our brothers in Nigeria.**
>> UCE: There is an Islamic State or there was an Islamic State in Nigeria.
>> **ALOWEMER: Of course there is.**
>
> _____
> 12.  Based on training and experience, I am aware that "mushrikeen" is an Arabic word that describes those who commit "shirk," or the sin of practicing polytheism or idolatry, and is typically used in a derogatory manner to describe Christians.

ECF No. 3-1, at ¶ 27.

Mr. Alowemer argues that paragraph 22 distorts how Mr. Alowemer's conversation with the UCE, "actually unfolded." ECF No. 127, at 2. As a remedy, Mr. Alowemer proposes the following changes to paragraph 22, with his proposed additions in bold and his proposed deletions struck out:

> On June 2, 2019, Alowemer and the UCE met for a third time in the Pittsburgh area for nearly 3 hours. Alowemer identified **a church with "polytheists and infidels"** ~~what he described as a "Nigerian" church~~ as ~~his~~ **a** target ~~for conducting a violent attack~~ **to plant an explosive device**. ~~Alowemer expressed his hope that destroying the Church with explosives would inspire other ISIS "brothers" in the United States to rise up and take similar actions. Alowemer claimed to want to target Nigerian [polytheist] Christians based upon his support for ISIS and their presence in Nigeria.~~ **Alowemer proposed planting the explosive at 2:00 or 3:00 a.m. and detonating shortly thereafter. At this meeting the UCE asked "So, why the Nigerians? All of them are polytheists." Alowemer responded "they [Nigerians] are all polytheists. We take revenge for our brothers in Nigeria." When asked if there was an Islamic State in Nigeria, Alowemer responded "There is an Islamic State or there was an Islamic State in Nigeria." When the UCE asked further details about ISIS in Nigeria, Alowemer said "I am not sure about this" but that "they all were pious." The UCE suggested that the attack would cause other "brothers" to rise up and Alowemer agreed."**

Compare ECF No. 127, at 2 with PSR, ¶ 22.

The Court finds that the information in paragraph 22 accurately summarizes paragraph 27 of the Affidavit and does not distort the interaction between Mr. Alowemer and the UCE. Accordingly, the objection to paragraph 22 is tentatively overruled.

The Court will hear from the government at sentencing as to its position adding Mr. Alowemer's proposed language to paragraph 22. However, the Court declines to accept the following proposed sentences:

> Proposed sentence: "When asked if there was an Islamic State in Nigeria, Alowemer responded 'There is an Islamic State or there was an Islamic State in Nigeria.'"

3

Reason:  This sentence does not accurately represent that it was the UCE who responded with the statement: "There is an Islamic State or there was an Islamic State in Nigeria," and not Mr. Alowemer.

Proposed sentence:  "When the UCE asked further details about ISIS in Nigeria, Alowemer said "I am not sure about this" but that "they all were pious.""

Reason : This sentence is an unnecessary addition to the factual summarization of paragraph 22.

Proposed sentence:  "The UCE suggested that the attack would cause other 'brothers' to rise up and Alowemer agreed."

Reason:  This sentence, which addresses Mr. Alowemer's *agreement* with the UCE that the attack would inspire other brothers to rise up, is duplicative of paragraph 22's current sentence that Mr. Alowemer *expressed his hope* that the attack would inspire other ISIS brothers to rise up.  It appears that the distinction Mr. Alowemer focuses on is that the phrase, "other brothers rising up," originated with the UCE and Mr. Alowemer agreed with the sentiment. Nonetheless, as stated, paragraph 22 accurately summarizes the information in the Affidavit.

### B.    Paragraph 23

Next, Mr. Alowemer objects that the final sentence of paragraph 23 (underlined below) is only partially accurate:

At the meeting on June 2, 2019, Alowemer detailed his plan to place an explosive device at the Church and detonate it with a delayed timer. Alowemer asked the UCE what supplies Alowemer could purchase to help assemble an explosive device strong enough to destroy the Church.  At several points during the meeting, the UCE made clear that the explosive force necessary to accomplish Alowemer's desired attack would likely kill many people in the residential area surrounding the Church, even if the Church were unoccupied at the time of explosion.

PSR, ¶ 23.  The defense contends that the final sentence should be replaced with the following two sentences:

Alowemer identified the other homes that may be collaterally damaged by an explosive device and expressed his belief that no one lived in those homes, nor that anyone would be in the worship center at the time of detonation  At that

time, Alowemer confirmed the primary motive was to destroy the building, not
to harm or kill individuals.

ECF No. 127, at 3. The government argues that paragraph 23 is accurate. The government

supports this assertion with information from paragraph 30 of the criminal complaint,

testimony from the June 21, 2019 preliminary hearing, and testimony from the August 16,

2019 detention hearing. ECF No. 132, at 6-7 (citing ECF No. 3, at ¶ 30; ECF No. 25, at 31;

and ECF No. 62, at 14). The government states that it will supplement the above evidence

with additional evidence at sentencing. ECF No. 132, at 7. The government also contends

that it is not credible that Mr. Alowemer did not believe that people lived in the homes in

proximity to the church because he had previously resided in the area and had conducted

extensive surveillance of the area. ECF No. 132, at 8. Finally, the government has no

objection to adding the following sentence to the end of paragraph 23: "The defendant's

primary stated motive was to destroy the church." ECF No. 132, at 8.

Based on the current evidence the Court concludes that paragraph 23 accurately

summarizes the relevant evidence. Thus, this objection is tentatively overruled, in part,

subject to the introduction of evidence and argument at sentencing. At sentencing, the

defense will have an opportunity to address the government's evidence in opposition to the

objection.

The Court also tentatively accepts the government's proposition to add as a final

sentence to paragraph 23 the government's proposed sentence: "The defendant's primary

stated motive was to destroy the church." The defense's parallel proposed sentence is: "At

that time, Alowemer confirmed the primary motive was to destroy the building, not to harm or

kill individuals." Argument on the competing sentences will occur at sentencing; however, at

this time, the Court tentatively grants the objection to paragraph 23 insofar as the addition of either the government's or the defense's proposed version of the final sentence will be accepted.

### C.  Paragraph 24

Next, Mr. Alowemer objects to the following statement in paragraph 24 concerning the purchase of materials intended for use in assembling an explosive device

> Alowemer provided the UCE with the items that he had purchased in the preceding days that were intended to be used for assembly of the destructive device: six bottles of nail polish remover, seven ice packs, and three 9-volt batteries.

PSR, ¶ 24.  The defense admits that it is true that Mr. Alowemer purchased the materials but contends that he did so at the direction of the UCE, who held himself out to be an explosives expert.  The defense contends that the description of Mr. Alowemer's activities concerning the purchase of the materials should reflect the dynamic between Mr. Alowemer and the UCE. ECF No. 127, at 3.

The Court sees no reason to alter the paragraph.  As the government notes, the preceding paragraph 23 already includes the following equivalent statement: "Alowemer asked the UCE what supplies Alowemer could purchase to help assemble an explosive device strong enough to destroy the Church."  PSR, ¶ 23.  The objection to paragraph 23 is tentatively overruled.

## II.  Offense Level Objection

Mr. Alowemer objects to paragraph 40, which provides for a 12-level increase in offense level and an automatic assignment of Criminal History Category VI, pursuant to section 3A1.4 of the Guidelines.  PSR, ¶¶ 40 & 51.  Section 3A1.4, also known as the

terrorism enhancement, states:

> (a) If the offense is a felony that involved, or was intended to promote a *federal crime of terrorism*, increase by 12 levels, but if the resulting offense level is less than 32, increase to level 32.
>
> (b) In each such case, the defendant's criminal history category from Chapter Four (Criminal History and Criminal Livelihood) shall be category VI.

USSG §3A1.4 (emphasis added). Subsection (a) requires that the defendant's felony offense be one that either involved a federal crime of terrorism or was intended to promote a federal crime of terrorism. A "federal crime of terrorism" is a crime that has "the meaning given that term in 18 U.S.C. § 2332b(g)(5)." USSG §3A1.4(a), comment. (n.1). Turning to section 2332b(g)(5) of Title 18, a federal crime of terrorism is defined as an offense that:

> (A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and
>
> (B) is a violation of one of [one of the statutes listed in section 2332b(g)(5)].

18 U.S.C. § 2332b(g)(5). As to (B), the offense to which Mr. Alowemer plead guilty, 18 U.S.C. § 2339B(a)(1), is one of the enumerated statutes. Therefore, whether the enhancement applies requires a determination of whether Mr. Alowemer's offense was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct."

The Court reserves issuing a ruling on whether the enhancement applies until after the parties have presented evidence and argument at sentencing.

### III.    Motions for Downward Departure

The Court must formally rule on any motions prior to determining the guideline calculation. A downward departure, if granted, would affect the sentencing guideline range.

Counsel for Mr. Alowemer has stated an intention to argue for a downward departure under three Guideline provisions.

First, defense counsel argues that Mr. Alowemer's criminal history category is substantially overrepresented pursuant to section 4A1.3(b).  Section 4A1.3(b)(1) states:

> (1)  STANDARD FOR DOWNWARD DEPARTURE.—If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.

USSG § 4A1.3(b)(1).  Here, Mr. Alowemer has never been convicted of a crime and has no documented criminal history, and therefore defense counsel argues that his criminal history category of VI substantially overrepresents his actual criminal history.

Next, defense counsel argues that Mr. Alowemer's mental and emotional conditions, primarily due to the Syrian civil war and associated displacement to Jordan where he lived in a refugee camp, warrant a downward departure from the sentencing guidelines pursuant to USSG § 5H1.3.  Section 5H1.3 provides, in part, that "Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines."

Finally, defense counsel intends to argue for a downward departure based on Section 5K2.20 (Aberrant Behavior).  Under section 5K2.20, "a downward departure may be warranted in an exceptional case if (1) the defendant's criminal conduct meets the requirements of subsection (b); and (2) the departure is not prohibited under subsection (c)."  USSG §5K2.20.  The requirements of subsection (b) are stated as follows:

> The court may depart downward under this policy statement only if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life.

§5K2.20(b).  As defense counsel notes, Application Note 3 also permits consideration of Mr. Alowemer's "(A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the effects of the offense."  USSG §5K2.20, comment. (n.3).

Given that defense counsel intends to present argument at sentencing in favor of a departure, and the government has not filed a formal response to the motions for downward departure, the Court reserves ruling on Mr. Alowemer's motions for a downward departure pending additional evidence and argument at sentencing.

## IV.   Motion for Variance

Defense counsel also intends to request a variance from the guideline sentence based on each of the reasons proffered for a formal departure.  Although argument in favor of a downward departure will overlap with argument in favor of a variance, the request for a variance will be considered as separate matter.  The Court therefore reserves ruling on the request for a variance until after the Court receives evidence and hears argument at sentencing.

## V.   Guidelines Calculation

It is noted that Mr. Alowemer's objection to the terrorism enhancement, if granted, would affect the guidelines calculations by removing twelve levels from the offense level and eliminating the automatic application of criminal history category of VI.  Similarly, if Mr.

Alowemer's request for a formal downward departure is granted, such would affect the guidelines calculations.  Having reserved ruling on these issues, the Court makes the following tentative guidelines calculations in accordance with the United States Sentencing Guidelines.

Mr. Alowemer's base offense level is twenty-six (26).

The base offense level is increased by two (2) levels pursuant to §2M5.3(b)(1), because the offense involved the provision of (A) dangerous weapons; (C) explosives; and (E) funds or other material support or resources with the intent, knowledge, or reason to believe they were to be used to commit or assist in the commission of a violent act

A victim related adjustment, resulting in an increase of the base offense level by twelve (12) levels, is applied because the offense is a felony that involved, or was intended to promote a federal crime of terrorism, pursuant to §3A1.4(a).

This brings the Adjusted Offense Level to forty (40).

The offense level is reduced two levels, pursuant to Section 3E1.1(a) of the Guidelines, to reflect Defendant's acceptance of responsibility; and reduced by an additional one level, pursuant to Section 3E1.1(b) of the Guidelines, to reflect Defendant's timely acceptance of responsibility.  Therefore, the total offense level is thirty-seven (37).

Defendant has zero (0) criminal history points; however, because the offense involved a federal crime of terrorism, his criminal history category is VI.

Based on a total offense level of 37 and a criminal history of VI, the advisory guideline range is imprisonment of 360 months to Life imprisonment.  However, the statutory

maximum term of imprisonment that may be imposed is 240 months; therefore, the guideline term of imprisonment is 240 months.

The guideline range for a term of supervised release is one year to Life.

The Defendant is ineligible for probation.

Restitution is mandatory, and restitution to be paid to the victim will be ordered. 18 U.S.C. § 3663A; USSG §5E1.1. At this time, the Court has not received a request for restitution from the victim.

The guideline fine range is $40,000 to $250,000.

A special assessment of $100 per count is mandatory, for a total special assessment of $100.

Finally, forfeiture of the following items will be ordered: Apple iPhone 5S with IMEI 35882305112361; Samsung J7 cellular phone with IMEI 35860109141464; LG LM-X410 cellular phone with IMEI 355380099566223; Dell Inspiron 3670 computer, express service code 2574745958; and associated electronic storage media seized on June 19, 2019.

## VI.     Conclusion

The Court will receive evidence and hear argument regarding these tentative findings and rulings as well as any other motions and responses thereto at the time set for sentencing presently scheduled for November 4, 2022 at 8:30 AM.

SO ORDERED, this 1st day of November 2022.

_____
Marilyn J. Horan
United States District Court Judge

11