IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA

vs.                         Criminal Number 19-219

MUSTAFA MOUSAB ALOWEMER


- - - - -


Transcript of Change of Plea held on September 16, 2021, in
the United States District Court, 700 Grant Street,
Pittsburgh, PA  15219, before the Honorable Marilyn J.
Horan, United States District Judge.


- - - - -


APPEARANCES:

  For the Government:    U.S. Attorney's Office
                         by Soo C. Song, Esq.

  For the Defendant:     Federal Public Defender's Office
                         by Andrew Lipson, Esq.


- - - - -


  Court Reporter:        Deborah Ann Betzler, RPR, FCRR
                         700 Grant Street
                         Suite 6260
                         Pittsburgh, PA  15219


- - - - -


     Proceedings recorded by mechanical stenography;
transcript produced by computer-aided transcription.

2

P R O C E E D I N G S

(Sealed sidebar held in chambers.)

(In open court.  Interpreter present.)

THE COURT:  Good morning.  We are convened this morning for a change of plea proceeding in the case of United States of America vs. Mustafa Mousab Alowemer at 19-219.  I do want to note for the record that every change of plea proceeding has a sealed portion of the proceeding.

Because of the logistics of moving parties in and out of the courtroom and COVID considerations, we did convene just immediately prior to convening in the courtroom in order to conduct that sealed portion of the proceeding so that we did not have to clear the courtroom and unduly expose anyone to contacts.  So in that regard, this proceeding, as all change of plea proceedings, does contain a sealed supplement portion, but that has already occurred; so we won't be adjourning in the middle of the proceeding, as occurs in other cases.

We have administered the oath to the interpreter, Mr. Ismail Haidar, as well.  And, Mr. Haidar, we would ask at this time if you could please review your credentials for those present.

THE INTERPRETER:  Absolutely, Your Honor.  My name is Ismail Haidar.  I'm a native Lebanese.

THE DEPUTY CLERK:  Mr. Haidar, if you don't mind coming to the podium, I think the court reporter and everyone

else would be able to hear you better.

THE INTERPRETER:  So my name is Ismail Haidar.  I'm a native Lebanese.  As a matter of fact, I speak Arabic Lebanese, which is part of the Levantine countries that include Syria, Jordan, and Lebanon.  However, I speak most of Arabic dialects because my work, I have interacted with most Arab people.  I start my career as an interpreter shortly after September 11th.  I had three months of training as a result of the American Arabic language and had three months of training how to become an interpreter.

I passed the written test in the state of Oregon, and I served Oregon's judicial department for about eight years. And I had my master's degree in public administration.  I spoke the English language throughout all my education, academic education, from kindergarten all the way until I earned a master's degree from Aldersgate University.  At the time I was working with the state courts in Oregon.  When I finished my master's, I contracted -- I passed the simultaneous and the consecutive test with the U.S. Department of State.

As a matter of fact, I became federally qualified, professionally qualified, as an interpreter, and I will be considered as an automatic contractor with the U.S. court system.  I've been serving the U.S. court system since -- more than maybe 12 years; and besides, you know, I'm a registered

4

qualified interpreter with the state of Oregon, and I am now a contractor with the State Department.  I work on a variety of programs, and also I provide services to the immigration court, to an agency called SOSi.

What else?  I speak French fluently, as well, and I work with many other nationwide agencies like TransPerfect.  I am a subcontractor with the United Nations, with the Pfizer company, with other prestigious companies nationwide.  And I'd be happy to answer any question.  Probably I missed lots of information about my credentials.

THE COURT:  Counsel, do you have any questions concerning Mr. Haidar's qualifications?

MS. SONG:  No, Your Honor.

MR. LIPSON:  Not at this time, Your Honor.  Thank you.

THE COURT:  Thank you.

THE INTERPRETER:  Thank you, Your Honor.

THE COURT:  Counsel, would you please enter your appearance for the record today.

MS. SONG:  Good morning, Your Honor.  Soo Song on behalf of the United States.  At counsel table is Special Agent Nick Edquist.

MR. LIPSON:  Good morning, Your Honor.  Andrew Lipson from the Federal Public Defender's Office on behalf of Mr. Alowemer.  Sitting with me at counsel table is Sam Saylor,

5

Assistant Federal Public Defender; and Khasha Attaran, Assistant Federal Public Defender.  Behind us is Melissa John, an investigator with our office, as well.

THE COURT:  Good morning, all.

We are here today to proceed with a change of plea to guilty as to Count 1 of the indictment at Criminal Number 19-219.

Ms. Biggs, would you please administer the oath to Mr. Alowemer.

(Defendant sworn.)

THE COURT:  Mr. Alowemer, do you understand that having declared and affirmed to tell the truth, your answers to my questions today are subject to the penalties of perjury or of making a false statement if you do not answer truthfully?

THE DEFENDANT:  Yes, Your Honor, I do.

THE COURT:  Mr. Alowemer, before accepting your guilty plea, there are a number of questions I will ask you to assure that your plea is valid.  If you do not understand any of the questions, please tell me, and I will further explain the question to you.  If at any time you wish to consult with your attorney, Mr. Lipson, please tell me, and I will provide you the time to consult with him.  I give you these instructions because it is essential to a valid plea that you understand each question before you answer.

6

Could you please state your full name.

Could you please keep your voice up a little bit.  I'm sorry.

THE DEFENDANT:  My name is Mustafa Mousab Alowemer.

THE COURT:  And how old are you, sir?

THE DEFENDANT:  23.

THE INTERPRETER:  I'm 23 years old.

THE COURT:  And how far did you go in school?

THE INTERPRETER:  I have a high school degree.

THE COURT:  And are you able to read, write, and understand the English language?

THE INTERPRETER:  Not much.

THE COURT:  Have you been able to communicate with your attorney, Mr. Lipson, without difficulty with the assistance of the interpreter?

THE INTERPRETER:  Lately, yes, I've been communicating with him okay with no problem.

THE COURT:  Mr. Lipson, have you been able to communicate with the defendant without any difficulty, using the interpreter?

MR. LIPSON:  I have, Your Honor.

THE COURT:  Mr. Alowemer, have you taken any prescribed or non-prescribed drugs or consumed any alcoholic beverages in the last 24 hours?

THE DEFENDANT:  No, Your Honor.

7

THE INTERPRETER:  No, Your Honor.

THE COURT:  Are you now or have you recently been under the care of a physician, including a psychiatrist or psychologist, or have you seen a therapist, social worker, or drug counselor?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Are you now or have you recently been hospitalized or treated for alcohol or narcotic addiction?

THE DEFENDANT:  No, Your Honor.

THE COURT:  And, Mr. Alowemer, I may have asked you this already, but what is your age?

THE INTERPRETER:  I'm 23 years old.

THE COURT:  And do you understand what we're doing today?

THE DEFENDANT:  Yes, Your Honor.

THE INTERPRETER:  I do.

THE COURT:  Mr. Lipson, do you have any questions or doubt as to Mr. Alowemer's competence to plead guilty today?

MR. LIPSON:  I have no such doubts, Your Honor.

THE COURT:  Mr. Alowemer, based upon your appearance today, your demeanor, your responses to my questions, and your attorney's representations, I, the Court, find that you are competent to proceed today.

THE DEFENDANT:  Yes, Your Honor.

THE INTERPRETER:  Yes.

8

THE COURT:  Mr. Alowemer, have you had a sufficient opportunity to discuss your case with Mr. Lipson?

THE DEFENDANT:  Yes, Your Honor.

THE INTERPRETER:  Yes.

THE COURT:  And are you satisfied with the job that he and your defense team has done for you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Alowemer, have you been furnished with a copy of the indictment detailing the charges at Counts 1, 2, and 3 against you?

THE DEFENDANT:  Yes, Your Honor.

THE INTERPRETER:  Yes.

THE COURT:  And have you had an opportunity to read it or have it read to you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Have you discussed with your attorney the charges in the indictment to which you intend to plead guilty?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand those charges in the indictment?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  I am going to review all of the charges in the indictment.  I recognize and acknowledge that you will be pleading guilty today to Count 1 and you will not be pleading guilty to Count 2 and 3.  But for purposes of

9

advising you of the content of the indictment, I'll be reading the entire indictment.

THE DEFENDANT:  Yes, Your Honor.

THE INTERPRETER:  That's correct.

THE COURT:  You are charged at Count 1 of the indictment with attempting to provide material support and resource to a designated foreign terrorist organization, ISIS. Specifically, that from in and around April 2019 through on or about June 19, 2019, in the Western District of Pennsylvania, you knowingly attempted to provide material support and resources as that term is defined in 18, U.S.C., Section 2339B(a)(1); to wit, services and personnel to a foreign terrorist organization, namely the Islamic State of Iraq and al-Sham, ISIS, which at all relevant times was designated by the Secretary of State as a foreign terrorist organization pursuant to Section 219 of the Immigration and Nationality Act, knowing that ISIS was a designated foreign terrorist organization, that ISIS engages in and has engaged in terrorist activity, and that ISIS engages and has engaged in terrorism, in violation of Title 18, United States Code, Section 2339B(a)(1).

You are also charged at Counts 2 and 3 of the indictment with two separate counts of distribution of information pertaining to the manufacture or use of an explosive. Specifically, in the Western District of Pennsylvania and

elsewhere, you knowingly distributed, by any means, information pertaining to, in whole or in part, the manufacture and use of an explosive destructive device and weapon of mass destruction. Namely, that on or about May 24, 2019, you distributed an instructional document entitled Beginner's Course for Young Mujahadeen.

THE INTERPRETER: May Your Honor repeat what you have said.

THE COURT: Yes. That on or about May 24, 2019, you distributed an instructional document entitled Beginner's Course for Young Mujahadeen; and on or about May 26, 2019, you distributed an instructional document entitled Manufacturing the Easiest Explosive Device with the intent that said information be used for and in furtherance of an activity that constitutes a federal crime of violence -- to wit, use of weapons of mass destruction -- and to provide material support and resources, in violation of Title 18, United States Code, Section 2332a(a)(2), all in violation of Title 18, United States Code, Sections 842(p)(2)(A) and 844(a)(2).

Do you understand the nature of these charges, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you have any questions about those charges?

THE DEFENDANT: No, Your Honor.

THE COURT: Mr. Alowemer, I'm now going to inform you

11

of your important constitutional rights and protections to which you are entitled if you were to proceed to trial but that you give up today by pleading guilty.

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If you were to plead not guilty, you would have a right to be assisted by an attorney at the trial of these charges.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If you qualify financially, you're entitled to be assisted by an attorney at no cost to you at all phases of the processing of these charges against you.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Under the Constitution and the laws of the United States, you are entitled to a speedy trial by a judge and a jury.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  At the trial, you would be presumed innocent.  You would not have to prove that you were innocent at trial.  Instead, the government would be required to prove your guilt by competent evidence and beyond a reasonable doubt before you could be found guilty.  Do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  At the trial, the jury must be unanimous in order to find you guilty on the charge against you.  That

means all 12 jurors must agree upon their decision.  Do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  At the trial, you would have the right to participate in the selection of a jury, and you would have the right to strike or eliminate any prospective juror if it was demonstrated that that juror was unable to render a fair and impartial verdict.  In addition, you would have the right to strike ten potential jurors without assigning any reason at all.  Do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  In the course of the trial, the witnesses for the government would have to come to court and testify in your presence.  Do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  In the course of the trial, your attorney could cross-examine the witnesses for the government, object to evidence offered by the government, and offer evidence on your behalf.  Do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  In the course of the trial, if you qualify as being financially unable to pay witness fees to witnesses you wish to call on your behalf, the government would pay those witness fees.  Do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  At the trial, you would have the right to testify if you chose to do so.  In addition, you would also have the right not to testify, and no inference or suggestion of guilt could be drawn from the fact that you did not testify.  Do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If you plead guilty and I accept your plea, you will waive your right to a trial and the other rights I have just discussed, there will be no trial, and I will enter a judgment of guilt and sentence you on the basis of your guilty plea after considering a presentence report. Do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If you plead guilty, you will also have to waive your right to not incriminate yourself since I will ask you questions about what you did in order to satisfy myself that you are guilty as charged, and you will have to acknowledge your guilt on the record.  Do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Having discussed your rights with you, do you still wish to plead guilty?

(The defendant and Mr. Lipson conferred.)

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  I understand that there is a plea agreement dated July 14, 2021.  Mr. Alowemer, you should

14

understand that I may or may not approve this plea agreement. You have a duty to disclose, however, any other plea agreement that you may have received other than the July 14, 2021, plea agreement.

THE INTERPRETER:  Asking me to repeat what you have said, Your Honor.  May I?

THE COURT:  Yes.

MR. LIPSON:  One moment, Your Honor.

THE COURT:  Yes.  That's fine.

(The defendant and Mr. Lipson conferred.)

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Alowemer, if you do not disclose any other formal plea agreement other than the July 14, 2021, plea agreement, you may not later assert the existence of any other formal plea agreement.

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Miss Song, we will discuss the July 14, 2021, plea agreement in a moment; but other than the July 14, 2021, plea agreement, did the government tender to Mr. Lipson any other formal plea agreement offer for Mr. Alowemer?

MS. SONG:  No, Your Honor.  The July 14, 2021, plea agreement is the only formal plea offer that was provided.

THE COURT:  Mr. Lipson, other than the July 14, 2021, plea agreement, did you receive any other formal plea agreement offer from the government?

MR. LIPSON:  I did not, Your Honor.

THE COURT:  Ms. Song, as regards the plea agreement for which a plea is being entered today, would you please review the terms of that plea agreement from July 14, 2021, for the Court and the defendant.

MS. SONG:  Yes, Your Honor.  The relevant portions of the plea agreement, Your Honor, are that Mr. Alowemer is agreeing to plead guilty to Count 1 of the criminal indictment at 19-219, which charges a violation of 18, United States Code, Section 2339B(a)(1).  Mr. Alowemer agrees to pay restitution to any victims, should the Court order. Mr. Alowemer agrees to forfeit any of his computers or computer media that were seized from him that the government currently possesses.  Mr. Alowemer is agreeing to pay a $100 special assessment to the clerk of this court.

Mr. Alowemer understands through this agreement that while the agreement does not include any commitments or agreements by either the United States Attorney or the defendant that relate to his immigration status, he understands that pleading guilty could have consequences related to his immigration status because he's not a United States citizen.

Under federal law, a broad range of crimes can result in removal from the United States, including a conviction for the offense charged at Count 1 of the indictment.  Immigration

consequences will be determined in a separate proceeding that is unrelated to the criminal charges here today.  Through the agreement, the defendant understands and affirms that he wants to plead guilty regardless of any immigration consequences that his plea may result in, even if he's automatically removed from the United States.

The plea agreement contains waivers of Mr. Alowemer's appellate rights with some important exceptions.

THE INTERPRETER:  Again, madam.  I'm sorry.

MS. SONG:  The plea agreement contains waivers of Mr. Alowemer's appeal rights with some important exceptions.  If the United States appeals from the sentence, Mr. Alowemer can appeal from the sentence.  If the Court imposes a sentence that exceeds the limits under law or unreasonably exceeds the guideline range determined by the Court, Mr. Alowemer can appeal.

Under the plea agreement, Your Honor, Mr. Alowemer is permitted to take a direct appeal from his sentence related to the application of the terrorism sentencing enhancement.

THE INTERPRETER:  I'm sorry.  I didn't get it.  Your Honor, may I ask for a copy of this plea agreement so that I can do a side translation, if possible?

MS. SONG:  Sure.

THE INTERPRETER:  Just to make it easy, you know, for both parties.

MS. SONG:  (Indicating.)

THE INTERPRETER:  Thank you so much.

MS. SONG:  Mr. Alowemer waives his right to file an attack upon his conviction or sentence under Title 28, United States Code, Section 2255; but nothing in the plea agreement would prevent Mr. Alowemer from later claiming ineffective assistance of counsel if it's permitted under law.  The United States agrees not to bring any additional charges against Mr. Alowemer related to his criminal conduct or based on evidence from his electronic devices and social media accounts.

After this Court imposes sentence, the United States Attorney will move to dismiss Counts 2 and 3 of the indictment.  If Mr. Alowemer withdrew his plea of guilty, those counts could be reinstated.  The government retains the right to tell the Court anything related to sentencing about the nature and extent of Mr. Alowemer's involvement in the offenses that are charged or anything related to the imposition of a fair and a just sentence.

The United States is agreeing to recommend a two-level downward adjustment and to move for an additional one-level adjustment for acceptance of responsibility, and this is if Mr. Alowemer maintains his acceptance of responsibility through sentencing.  The United States will take any appropriate position if there are appeals from the sentence or

18

if there are any post-sentence motions.

The maximum terms of penalty in this plea agreement, Your Honor, are imprisonment of not more than 20 years, a fine of not more than $250,000, and a term of supervised release up to life.  This Court will determine if there are victims entitled to restitution.  Under this plea agreement, either party can argue for departures under the sentencing guidelines or variances pursuant to 18, United States Code, Section 3553(a). And finally, Your Honor, the sealed supplement that we addressed prior to appearing in court is incorporated as a part of the plea agreement.

THE COURT:  Mr. Alowemer, have you reviewed the July 14, 2021, plea agreement?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And have you reviewed it in detail with your attorney, Mr. Lipson?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Have all of your questions concerning the plea agreement been answered to your satisfaction by Mr. Lipson?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand all of the terms and provisions of the plea agreement?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you have any questions now for your

attorney or the Court?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Mr. Lipson, do you agree that the terms of the plea agreement have been correctly stated?

MR. LIPSON:  I do agree, Your Honor.

THE COURT:  Mr. Alowemer, you've heard the terms of the plea agreement as reviewed for you by the Assistant United States Attorney.  Do you agree with those terms?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Have you signed the last page of that plea agreement?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you understand that by signing that plea agreement letter here today, you agree to the terms that are set forth in the July 14, 2021, plea agreement?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do we have possession of that plea agreement?

THE DEPUTY CLERK:  We do, Your Honor.

THE COURT:  Very well.  That will be, then, incorporated into the record of today's proceeding.

THE INTERPRETER:  I'm sorry, Your Honor?

THE COURT:  Yes.  I asked if -- I'll start again.  I asked if we had possession of the signed plea agreement.  My courtroom deputy advised yes.  And I've indicated it would be

20

included within the record today.

THE INTERPRETER:  I'm sorry.  I'm having difficulty with the headset, Your Honor, because it's the same time.

THE COURT:  Okay.  What I am saying is we have received the signed plea agreement, and I'm directing that that signed plea agreement will be incorporated in the record today.

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Alowemer, do you understand that generally you or the government would have the right to appeal any sentence that this Court may impose but that pursuant to the plea agreement you are giving up your right to appeal both the validity of your plea and the legality of your sentence?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  There are four limited exceptions in your case that are spelled out in the plea agreement when you will be permitted to appeal your sentence.  First, you may take a direct appeal from the sentence limited to the following issue:  The application of Section 3A1.4 of the United States Sentencing Guidelines, the terrorism section, as set forth during the sentencing proceedings.

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  In addition, you are permitted to appeal your sentence if the United States files an appeal from the sentence or if the sentence exceeds the applicable statutory

21

limits set forth in the United States Code or if the sentence unreasonably exceeds the applicable advisory guideline range under the United States Sentencing Guidelines.

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You are waiving your right to file a motion to vacate your sentence under Title 28, United States Code, Section 2255.  In that regard, you will not be able to attack your conviction or sentence or file any collateral proceeding to attack your conviction or sentence.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

(The clerk and the Judge conferred.)

THE COURT:  Mr. Haidar, are you hearing me okay at this point?

THE INTERPRETER:  I'm okay, actually, without the headset, yes, better.  I should have actually removed it from the beginning, but I can still talk right here.  It's excellent.  Thank you so much.

THE COURT:  Okay.  Mr. Alowemer, in that your plea agreement contains a waiver of appellate rights, you need to be aware that this waiver may affect any rights you may have to subsequently ask or request any change or modification in any supervised release either in regards to the time of supervised release or conditions of supervised release.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Alowemer, your plea agreement provides that nothing in the waivers of rights precludes you from raising any claim of ineffective assistance of counsel if otherwise permitted by law.  By this provision, you are not waiving your right to pursue an ineffective assistance of counsel claim, and the government retains its right to respond to any such claim in the manner it deems appropriate.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Turning to the possible sentencing, you should know, Mr. Alowemer, that the maximum sentence and penalties which may be imposed upon you under Count 1 of the indictment are as follows:  A term of imprisonment of not more than 20 years, a fine not to exceed $250,000, a term of supervised release of up to life.  You are also subject to a mandatory special assessment of $100 as to each count upon which you are convicted.  In your case, that would be $100.

Forfeiture is applicable in this case of property identified in the indictment, that being the Apple iPhone 5S, the Samsung J7 cellular phone, the LG LM-X410 cellular phone, a Dell Inspiron 3670 computer, and associated electronic storage media, all of those items having been seized on June 19, 2019.  The indictment contains the respective serial numbers and identifier numbers for those items.  Lastly, you

may be ordered to pay restitution, pursuant to the Victim/ Witness Protection Act, to victims and other persons or parties authorized by law in such amounts as the Court shall direct.

Pursuant to the plea agreement dated July 14, 2021, you are pleading guilty today to Count 1. The government has agreed to dismiss Counts 2 and 3 following your sentencing. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: If you are sentenced to prison, followed by a term of supervised release, and if you violate the terms of that supervised release, I can take the following actions: I may extend the term of supervised release if the term previously imposed is less than the maximum authorized term of supervised release. I may modify, reduce, or enlarge the conditions of supervised release.

I may revoke the term of supervised release, and you may be imprisoned up to all or part of the term of supervised release authorized for the offense. In that case, there would be no credit for the time previously served on supervised release. Or I can impose a combination of imprisonment followed by a term of supervised release so long as the combination does not exceed the original authorized term of supervised release. Do you understand these consequences?

THE DEFENDANT: Yes, Your Honor.

THE COURT:  A sentencing judge is required to consider the applicable guideline range in determining a sentence, but judges possess broad discretion to sentence based upon the circumstances of each case so long as the sentence imposed is within the statutory range and is reasonable.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Because the sentencing guidelines are only advisory, a Court may, for good reason shown, impose a sentence outside the recommended guideline range but within the applicable statutory minimum and/or maximum penalties.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Alowemer, I must advise you that if I choose not to impose a sentence that you anticipate or that the prosecutor or your counsel anticipate and if I impose a more severe sentence, you will not be entitled to withdraw your guilty plea.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Once I accept the agreement, you will have no right to withdraw your guilty plea if I do not follow any stipulated agreements, recommendations, or requests contained within your specific plea agreement.  Do you understand this?

THE DEFENDANT:  Yes, Your Honor.

25

THE COURT: I therefore accept the plea agreement and will tender it to our deputy clerk and file it with the record today.

Mr. Alowemer, under the Sentencing Reform Act of 1984, parole has been abolished; so that if you're sentenced to prison, you will not be eligible for parole. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Alowemer, have you and your attorney, Mr. Lipson, discussed how the guidelines might apply in your case?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is that correct, Mr. Lipson?

MR. LIPSON: It is, Your Honor.

THE COURT: Mr. Alowemer, I'll not be able to determine the advisory guideline range for your case until after a presentence investigation report has been completed and after you and the government have had an opportunity to challenge facts reported by the probation officer.

Miss Song, what is the government's position as to the applicable guideline sentencing range in this case?

MS. SONG: Your Honor, the government believes that the controlling guidelines are 2M5.3 and 3A1.4, which is the terrorism enhancement. Those two guidelines would combine to produce a sentencing range of 360 months to life; which, of

course, would be capped by the 20-year maximum under law.

THE COURT:  Will the government seek any enhancements based on any prior conviction of the defendant?

MS. SONG:  We do not intend to seek any such enhancements, Your Honor.

THE COURT:  Mr. Lipson, what's the defendant's position as to the applicable guideline sentencing range?

MR. LIPSON:  Your Honor, Mr. Alowemer disagrees with the government's position with respect to the sentencing guidelines.  Mr. Alowemer does concede that it appears that Section 2M5.3 would be the applicable guideline governing Count 1 in his conduct in this case.  Mr. Alowemer disagrees that the enhancement under Section 3A1.4 applies in this case. Accordingly, before acceptance of responsibility, he would believe the applicable guideline range would be 78 to 97 months.

THE COURT:  Mr. Lipson, did I understand you correctly?  You said before the three-point reduction?

MR. LIPSON:  That's correct, Your Honor.

THE COURT:  What is the point assignment you are working with there?

MR. LIPSON:  That would be an offense level of 28 based on Section 2M5.3; which, of course, under Criminal History Category I, Your Honor, would result in an advisory guideline range of 78 to 97.  Subtracting three points for

acceptance of responsibility, as is provided for in the terms of the plea agreement, the advisory guideline range would be 57 to 71 months.

THE COURT:  Thank you.

Mr. Alowemer, do you understand that I'm not bound by any estimation or recommendation of sentencing that is anticipated by your attorney or by the government?  I can sentence you up to the maximum sentence permitted by statute.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Miss Song, will you please recite the elements of the offense to which Mr. Alowemer is pleading guilty.  That would be Count 1.

MS. SONG:  Yes, Your Honor.  There are two elements, and they are that the defendant knowingly provided material support or resources to a foreign terrorist organization; that is, ISIS.  And the second element that is the defendant knew that ISIS was a designated terrorist organization or that ISIS had engaged in or was engaging in terrorist activity or terrorism.

THE COURT:  Mr. Alowemer, do you understand that if you chose to go to trial, the government would have been required to prove each element of the offense charged beyond a reasonable doubt in order to prove you guilty?

THE DEFENDANT:  Yes, Your Honor.

28

THE COURT:  Miss Song, what, in summary, would be the government's evidence as to this charge?

MS. SONG:  Your Honor, if we proceeded to trial, the United States would present the following in the form of the defendant's written statements and online posts, his oral statements and recorded meetings, his social media accounts, video recordings, physical documents and objects, and testimony by FBI agents and confidential human sources.  ISIS was a foreign terrorist organization at all relevant times during the conduct by the defendant.

The Pittsburgh FBI investigation revealed that Alowemer plotted to bomb the Legacy International Worship Center, a church located on Wilson Avenue on the North Side of Pittsburgh, using a weapon of mass destruction, which was a bomb.

According to the defendant, he was motivated to detonate the bomb at the church to support the cause of ISIS and to inspire other ISIS sympathizers in the United States to rise up.  The defendant targeted the church, which he described as both Christian and Nigerian, in order to, quote, "take revenge for our brothers in Nigeria."

The defendant offered to help ISIS brothers identify Yazidis residing in Pittsburgh to avenge ISIS brothers in Baghuz, and he also expressed a willingness to kill an American serviceman because, quote, "he had killed our sisters

in Baghuz and Iraq."

Beginning in March 2019, the defendant used multiple messaging applications to talk to an online FBI covert employee, or OCE, who claimed to be an ISIS brother living outside of the United States.  In communicating with the OCE, the defendant expressed his desire to travel abroad to conduct jihad and asked the OCE to help him.

The defendant offered to provide information about attack targets in Pittsburgh to support ISIS; asked to be provided with a weapon with a silencer; and pledged bay'aa, or an oath of allegiance to the leader of ISIS, Abu Bakr al-Baghdadi, in a video that he recorded of himself.

Because Alowemer expressed a desire to meet other ISIS members in the United States, the OCE provided a means for the defendant to communicate directly with an FBI undercover employee that we'll refer to as a UCE and an FBI confidential human source, or CHS.  Alowemer began communicating with the UCE online on April 13th of 2019, and they communicated almost daily until his arrest in June of 2019.

The UCE told the defendant that he was an ISIS brother living in another state in the United States.  The defendant said that he was excited to meet the UCE and referred to him as a brother from, quote, "the Caliphate soldiers," or ISIS. The defendant asked for a secure telephone to communicate with the UCE and other ISIS brothers so that they couldn't be

30

detected or surveilled.

On April 16th of 2019, the defendant and the UCE met in Pittsburgh for approximately three and a half hours.  The CHS attended the meeting, who was described as a fellow ISIS brother.  During the meeting, the defendant discussed how best to participate together with the UCE and CHS in a violent attack in support of ISIS.  Based on the defendant's prior request, he was provided with a prepaid cellular telephone during that meeting.

On April 25, 2019, they met for a second time in the Pittsburgh area in person for about two hours.  In the weeks following the April 25th meeting, the defendant sent the UCE what appeared to be an ISIS propaganda video that depicted a large truck bomb being detonated.  In the video, which appeared to have been filmed in the Middle East, the explosion destroyed several multistory buildings and an urban area the size of a city block.

On May 24 and May 26, 2019, through a mobile messaging application, the defendant sent several Arabic language instructional documents with step-by-step instructions to manufacture explosives, toxins, poisons, and IEDs.  On June 2, 2019, the defendant and the UCE met for a third time in Pittsburgh for nearly three hours.

Alowemer identified what he described as a Nigerian church as the target for his attack.  The defendant expressed

31

his hope that by destroying the church with explosives, other ISIS brothers in the United States would rise up and take action.  The defendant claimed to want to target a Nigerian Christian church based on his support for ISIS.

The defendant described placing an explosive device at the church and detonating it with a delayed timer.  He asked the UCE what supplies he could purchase to help assemble a bomb strong enough to destroy the church.  At several points during the meeting, the UCE made clear that the explosive force necessary to accomplish Alowemer's desired attack would likely kill many people in the residential area surrounding the church.

On June 11, 2019, the defendant, the UCE, and the CHS met in person for a fourth time in the Pittsburgh area for nearly two and a half hours.  The defendant provided the UCE with the items he had purchased that were intended to be used in the construction of a bomb, six bottles of acetone nail polish remover, seven ice packs, three 9-volt batteries.

The defendant then guided the UCE and CHS by car to the church to show them its location, to assess the environment, to determine what explosive charge would be needed, and where the defendant would eventually place the backpack containing the bomb.  The defendant outlined the intended movements of their respective cars to assure that they could escape from the scene; and he showed the CHS where he should park, which

was in the vicinity of a nearby police station.

The defendant had discussed a second device that could be timed to go off as the first responders arrived at the church; which, in his view, would shut down the City of Pittsburgh. The defendant suggested claiming credit by leaving an ISIS-affiliated flag or a sign with the words "We Arrived" near the scene of the attack.

Also at this meeting on June 11th, the defendant provided printed copies of detailed Google Maps that he had marked in his own handwriting with the routes of arrival and escape and that contained the street names.  He also provided a point-by-point handwritten list of instructions in Arabic that would assure the smooth execution of the operation of the bomb.  The target church was the Legacy International Worship Center on Wilson Avenue in Pittsburgh.

On June 19, 2019, the defendant met with the UCE in the Pittsburgh area for a fifth time, and he was arrested by the FBI.  He brought several boxes of nails to the meeting, and he wore an ISIS ring on his hand.  Following his arrest, the defendant made statements about the plot to bomb the church. He said that he knew that the acts were terrorist acts, and he admitted to communicating with the online undercover FBI agent, the UCE, and the CHS.

That's a summary of the evidence we'd present at trial, Your Honor.

33

THE COURT:  Mr. Alowemer, do you agree with the prosecution's summary of what you did?

MR. LIPSON:  Your Honor, if I may, Mr. Alowemer admits the facts are sufficient to prove the elements of Count 1 as recited earlier by the government, which Mr. Alowemer agreed to; that, namely, he knowingly provided material support or resources to a foreign terrorist organization and that he knew that the organization was a designated terrorist organization or that the organization had engaged or was engaging in terrorist activity or terrorism. Mr. Alowemer believes that the government would have sufficient information to establish those two elements of the offense.

With respect to the government's recitation of the evidence that they would present at trial, he does object -- or disagrees, rather, in two key respects.  One, Your Honor, he disagrees with the government's characterization of his specific motivation for his actions in this case.  He concedes that he knowingly provided material support or resources to a foreign terrorist organization, and that organization has been identified as ISIS.  But the basis for that motivation is a fact in dispute between Mr. Alowemer and the government and which we intend to litigate more during the sentencing process.

The other smaller point that Mr. Alowemer disagrees with,

34

or at least disagrees with the characterization, is any potential insinuation that the government made when it said that he, quote, unquote, discussed a second incendiary device to be placed at the Legacy Worship Church.  Your Honor, I believe that Mr. Alowemer intends to discuss the context in which that discussion occurred and that that truly was not his desire or intention at that time in this scheme.

But with that, Your Honor, he does agree that the government would otherwise provide sufficient evidence to prove beyond a reasonable doubt that he committed the offense charged at Count 1 of the indictment.

THE COURT:  Mr. Alowemer, do you agree with the admissions and representations that your attorney has just put forth?

THE DEFENDANT:  Yes, Your Honor, I do.

THE COURT:  Do you believe that the facts and evidence available to the government are sufficient to support and establish the elements of the offense to which you are pleading guilty?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Is there anything further by way of addition or correction that you wish to make at this time?

THE DEFENDANT:  No, Your Honor.

THE COURT:  I find that there is a factual basis to accept Mr. Alowemer's plea of guilty to the offense charged in

35

Count 1 of the indictment at Criminal Number 19-219.

Mr. Alowemer, having been advised of all your rights, do you still wish to plead guilty?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Lipson, is this consistent with your advice?

MR. LIPSON:  It is, Your Honor.

THE COURT:  Mr. Alowemer, the offense to which you are pleading guilty is a felony offense.  If your plea is accepted, you will be adjudged guilty of this offense; and such adjudication may result in consequences affecting your right to vote, your right to hold public office, your right to serve on a jury, and the right to possess any kind of firearm. Do you understand this?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  In addition, defendants who are serving any probation or parole at the time of the entry of a guilty plea, that probation or parole may be detrimentally affected. Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Alowemer, are you a United States citizen?

THE DEFENDANT:  No, Your Honor.

THE COURT:  In such case, in addition to the possible penalties of which I have advised you, because you are not a

36

United States citizen, you may also face a risk of removal from the United States after you have served any sentence imposed by this Court.  Under federal law, a broad range of crimes are removable offenses.  Removal and other immigration consequences are the subject of separate proceedings, however. Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And your plea agreement specifically provides for that identification of consequences and concerns. Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Alowemer, no one, including your attorney or the district court, can predict the effect of your conviction on your immigration status.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you still wish to plead guilty today even though the immigration consequences of your guilty plea are unknown and may result in your automatic removal from the United States?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Alowemer, has anyone made any threat to you or to anyone else that has forced you to plead guilty today?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Has anyone made any promise to you that has induced you to plead guilty today?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Has anyone made any prediction or promise to you as to what your actual sentence will be other than what you have been told as the maximum sentence?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Have you been instructed by your attorney, the attorney for the government, or anyone else to respond untruthfully to any question I've asked today?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Do you understand everything we've discussed today, sir?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And, Mr. Alowemer, are you satisfied in all respects with the advice and representation from Mr. Lipson and your defense team?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Alowemer, you are charged by way of indictment at Criminal Number 19-219, Count 1, with attempting to provide material support and resource to a designated foreign terrorist organization, ISIS, from in and around April 2019 through on or about June 19, 2019.

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  How do you plead to this charge?

38

THE DEFENDANT:  Your Honor, I'll plead guilty.

THE COURT:  Mr. Alowemer, since you are competent, since you know and understand your right to a trial and the consequences of waiving that right, since you know the maximum possible penalties, and since you are voluntarily pleading guilty, I, the Court, accept your guilty plea, find you guilty of the offense for which you are pleading guilty, and enter a judgment of guilty on that plea.  There is a Change of Plea form for the purposes of entry of a guilty plea, changing the original plea in this case.  Has that been signed?

MR. LIPSON:  It has, Your Honor.

THE COURT:  If we could please have that filed of record.

Mr. Alowemer, do you acknowledge that you have signed that Change of Plea form to reflect a plea of guilty?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Alowemer, I will be ordering the probation office to prepare a presentence investigation report.  That report will be important to me in my decision as to what your sentence will be.  Pursuant to local criminal rules, you and your attorney will have an opportunity to examine that report; and at the time of sentencing, you will have the right and opportunity to present information to me concerning matters within the report with which you dispute.

THE DEFENDANT:  Yes, Your Honor.

39

THE COURT:  Your disposition of sentencing is scheduled for Wednesday, January 26, 2022, at 9:30 a.m.  As to release or detention pending sentencing, you are presently detained, and you will remain in custody pending sentencing.  Mr. Alowemer, you and Mr. Lipson will be scheduling an appointment with the probation office for the conduct of your presentence investigation report.

Counsel, at this time are there any questions or issues that need addressed or clarified in relation to the interpretation that's been done today?

MS. SONG:  Not on behalf of the United States, Your Honor.

MR. LIPSON:  Not on behalf of Mr. Alowemer, Your Honor.

THE COURT:  Counsel, are there any other matters that need to be addressed prior to adjournment?

MS. SONG:  No, Your Honor.

MR. LIPSON:  No, Your Honor.

THE COURT:  Mr. Alowemer, is there anything further you need to address before we adjourn?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Very well.  We are adjourned.  Thank you.

(The above-captioned matter was concluded.)

- - - - -

40

C E R T I F I C A T E

I, DEBORAH ANN BETZLER, RPR, FCRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled case.


s\ Deborah Ann Betzler               01/16/2023
DEBORAH ANN BETZLER, RPR, FCRR       Date of Certification
Official Court Reporter